UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| In Re:  Chhatrala Grand Rapids, LLC,<br>    *dba* Crowne Plaza Grand Rapids<br>    *nka* Bhogal Enterprises, LLC<br><br>        Debtor.<br>_____/ | Chapter 11 Bankruptcy Proceeding<br>Filed:  September 16, 2019<br>Case No.  19-03908-jtg<br>Hon. John T. Gregg |
| In Re:  Bhogal Enterprises, LLC,<br>    *fka* Chhatrala Grand Rapids, LLC<br>    *dba* Crowne Plaza Grand Rapids<br><br>        Debtor.<br>_____/ | Chapter 11 Bankruptcy Proceeding<br>Filed:  September 16, 2019<br>Case No.  19-03909-jtg<br>Hon. John T. Gregg |

**CREDITOR ACCESS POINT FINANCIAL, LLC'S BRIEF IN SUPPORT OF THE MOTION TO DISMISS CASE PURSUANT TO 11 U.S.C. § 1112(b) AND 11 U.S.C. § 305 WITH PREJUDICE**

NOW COMES Creditor, Access Point Financial, LLC ("**Access Point**"), by and through its counsel, Keller & Almassian, PLC, and hereby submits this Motion to Dismiss Case with Prejudice.

**INTRODUCTION**

1. The Bankruptcy Court should not be a temporary safe space for those who wish to delay liquidation of collateral when there is no possible chance of reorganization, simply because the owners are afraid of Receivership. State Court Receiverships are effective when reorganization is impossible.

2. On August 22, 2019, the Honorable Christopher P. Yates entered a temporary *ex parte* order appointing a receiver in the case of Access Point Financial, LLC v. Chhatrala Grand Rapids, LLC, case number 19-07367-CBB.

3. On September 3, 2019, Judge Yates entered an Order Extending Amicus Management, Inc. as Receiver of Chhatrala Grand Rapids, LLC and its related property through September 17, 2019. See Attached Motion, Brief in Support, and Order Extending *Ex Parte* Appointment of Receiver as **Exhibit 1**.

1

4.  Judge Yates set a hearing for September 16, 2019 at 9:00 a.m., to expand the scope of the receivership since service of process and notice had been accomplished following *ex parte* appointment. See Order in **Exhibit 2**.

5.  Chhatrala Grand Rapids, LLC, ("**Debtor**") filed this Chapter 11 bankruptcy proceeding on September 16, 2019.

6.  The Debtor's Managing Member has used the corporate bank account for personal expenditures, including purchasing a luxury vehicle, paying private school tuition in California where he resides, and relinquishing hotel operations to a hotel management company, Marshall Hotels. Immediate hotel improvements in amount of $14,000,000 are required and unpaid property taxes exceed $125,000. The Crowne Plaza Flag will likely close if these contemplated improvements are not completed in two months.

7.  This case should be dismissed and all parties left to their State law remedies.

8.  Debtor cannot reorganize.

## FACTS

9.  Debtor entered into two promissory notes with a combined indebtedness of $15,000,000.00 with Access Point on October 10, 2017 ("Promissory Notes"). The Promissory Notes are secured by a first priority mortgage on 5700 28th Street SE Grand Rapids MI 49546 ("Mortgage"). The mortgaged property is operated by Chhatrala as a Crowne Plaza Hotel. Surinder Bhogal and Bhavneet Bhogal ("Guarantors") guaranteed the repayment of the indebtedness under the Promissory Notes. The indebtedness is also secured by an Equipment Loan Security Agreement dated October 10, 2019 ("Security Agreement") and Assignment of Leases and Rents ("Assignment of Rents"). The Promissory Notes, Mortgage, Guarantees, Security Agreement and Assignment of Rents are collectively referred to herein as "Loan Documents."

10.  Access Point has properly perfected its collateral security interest by filling a UCC-1 financing statement.

11.  The total amount of the debt owed to Access Point is approximately $15,265,424.98.

12.  Debtor also entered into a Secured Promissory Note and Mortgage with Interested Party Shiva Management ("**Shiva**") on October 10, 2017 ("Shiva Note and Mortgage"). Shiva is owed $2,088,027.40 pursuant to the Shiva Note and Mortgage and is the perfected second position

mortgage. Debtor is in default of the Shiva Note and Mortgage by, among other things, failing to pay Shiva. As a result Shiva initiated foreclosure by advertisement proceedings.

13. Debtor has repeatedly misappropriated funds.

14. Debtor has failed to make its May through September payments pursuant to the Loan Documents. Access Point has accelerated its indebtedness and triggered its rights under the Loan Documents by sending the Notice of Default and Acceleration on July 23, 2019. Within days of receiving that letter, Debtor transferred $80,000.00 out of the hotel operating account on July 29, 2019.

15. Debtor relies upon a third-party management company, Marshall Hotels to manage the Property. But Debtor and the Guarantors have set up its bank accounts to clear all hotel revenue into a Bank of America account ("Hotel Revenue Account") that is not controlled by Marshall Hotels. Debtor and the Guarantors allocate some, but not all, of the hotel revenue to a PNC operations account that Marshall Hotels utilizes to pay hotel expenses. The PNC operations account is not provided with enough funds from the Hotel Revenue Account to pay the Property's payables, including any debt service, property taxes, or capital improvements.

16. The aging accounts payable has surged to $345,237.67. These actions have subjected the Property to recent utility shut-off notices, critical vender holds, and service disruptions, as detailed by Marshall Hotels.

17. The funds in the Hotel Revenue Account that are placed beyond the reach of Marshall Hotels, and by extension beyond the reach of all legitimate creditors are summarized as "Owner's Activities". These unexplained and uncharacterized "Owner's Activities" include cash withdrawals in the State of California, various credit card payments, and transfers that range between $52,586.35 and $215,123.41 per month. Of particular concern is an $80,000.00 transfer within days of Debtor's receipt of Access Point's notice of intent to accelerate its indebtedness. The transfer is described as "CA TLR transfer to Sav *7102". This $80,000.00 transfer demonstrates Debtor's propensity for transferring funds upon notice of a creditor's protective actions.

18. The Bank of America hotel revenue account has been routinely subject to dissipation and misappropriation by its Managing Member. Examples include a $30,000.00 "car down payment" to Fletcher Jones (see **Exhibit 3)**; a "CH CSU Pomona School Fees" ($3,528.31); and "University of AC Riverside Tuition Fees" ($5,248.46), which all demonstrate the immediate

risk of dissipation of funds. Debtor's own Managing Member insists that it's taking control of the Debtor is in the best interest of the Debtor.

19. Debtor has failed to make any billed tax escrow payments since October 2018 and has a $0.00 tax escrow balance, with a $125,967.67 tax bill due on September 15, 2019. **Exhibit 4**.

20. Debtor is also in breach of its obligations to its hotel flag franchise International Hotels Group (IHG). See **Exhibit 5**.

21. The Property Improvement Plan requires approximately $14,000,000 in improvements. See **Exhibit 6**.

22. The Debtor's own budget does not show funds necessary to support a feasible plan. The Debtor filed a projected budget showing three months of revenue and expenses (see DN 10, pg. 16).

23. However, the Debtor's budget fails to include a number of additional necessary expenses that, when included, show the Debtor will very quickly be underwater and unable to operate. Debtor's budget fails to account for adequate protection payments for Access Point, adequate protection payments for Shiva, pre-petition property tax amounts, or the Property Improvement Plan cost expenses of approximately $14 million as referenced in Exhibit 6. Notably, the hotel income has just been at its highest. According to Debtor's budget, net income crashes from $140,540 in October to $46,057 in November.

## **LEGAL ANALYSIS**

24. As the Court is aware, a creditor in a chapter 11 bankruptcy has standing to challenge and request the dismissal of a chapter 11 bankruptcy proceeding. See 11 U.S.C. §§ 1109 (any party in interest, including a creditor or any party with a financial interest in the outcome of the case may participate in the proceedings in order to protect that interest, and may appear, be heard, and raise any issue in a case under Chapter 11); 11 U.S.C. § 1112(b) (a party in interest may request dismissal or conversion of a Chapter 11 case for "cause"); 11 U.S.C. § 305(a)(1) (a court may dismiss a case if it is in the best interest of the creditors or debtor).

**Dismissal Under 11 U.S.C. § 1112**

25.     The Bankruptcy Code provides that the Court shall convert or dismiss a Chapter 11 case "if the movant establishes cause." 11 U.S.C. § 1112(b). The Code does not strictly define "cause", but rather states that cause may "include" certain conditions. 11 U.S.C. § 1112(b)(4). The conditions set forth in 11 U.S.C. §1112(b)(4) which are <u>directly applicable</u> in this case are as follows:

>   (A)   substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation;
>
>   (B)   gross mismanagement of the estate; . . .
>
>   (F)   failure timely to pay taxes owed after the date of the order for relief or to file tax returns due after the date of the order for relief; . . .
>
>   (M)   inability to effectuate substantial consummation of a confirmed plan;

26.     The list of conditions set forth in 11 U.S.C. 1112(b)(4) is not, however, exhaustive. *In re Gonic Realty Trust*, 909 F.2d 624, 626-27 (1st Cir. 1990). The Court may consider other factors as well as use its equitable powers to make such a determination. As set forth below, "cause" is easily established in this case.

27.     <u>Substantial or Continuing Loss To or Diminution of The Estate and the Absence of a Reasonable Likelihood of Rehabilitation and Gross Mismanagement - 1112(b)(4)(A) and (B)</u> - Debtor's principals live in California and have failed to manage the property, turning it over to Marshall Hotels, a hotel management company. The Receiver was working with Marshall Hotels. Creditor Access Point funded $129,000 to the Receiver on or about September 4, 2019 based on Marshall Hotels request to pay necessary critical vendors.

28.     <u>Failure to Pay Property Taxes - 1122(b)(4)(F)</u> - Property taxes are delinquent. The total past due balance currently owed to the Kent County Treasurer is in excess of $125,967.67. See **Exhibit 4** - Kent County Tax Records. *See, e.g., In re Byram Rentals, Inc.*, 410 B.R. 620 (Bankr. W.Dist.Ark. 2009) (Creditor was entitled to dismissal of debtor's Chapter 11 case under 11 U.S.C. § 1112(b) because debtor had consistent pattern of failing to maintain insurance on his rental properties and failed to pay real property taxes on some of units).

29.     <u>Inability to Effectuate Substantial Consummation of a Confirmed Plan - 1112(b)(4)(M)</u> – With significant taxes owed, and no adequate funds for necessary capital

improvements, there is little chance a Confirmed Plan can be achieved. Debtor has no chance of obtaining an impaired voting class given the amount of debt and the potential deficiency balance owed to the secured lenders. The two secured lenders will control the general unsecured voting class with deficiency balances, should there be a cramdown.

30. Accordingly, any further delay in dismissal of this case – so that Access Point can bring the subject property to auction for liquidation – only prejudices the rights of Access Point and the other creditors without any rational basis to do so.

**Dismissal Is Also Appropriate Under The Doctrine Of Bad Faith**

31. Separate and apart from the foregoing, dismissal of this case is also warranted under the doctrine of bad faith.

32. Debtor has not made a direct mortgage payment in five months.

33. Chhatrala Grand Rapids, LLC is a dissolved California Limited Liability Company as a result of a membership vote. The certificate of dissolution was voluntarily filed on February 11, 2019. See **Exhibit 7**. The dissolution was carried out under California statute by filing the certificate of cancellation on February 11, 2019. See **Exhibit 8**.

34. Significantly, the California Limited Liability Act requires a vote of the members to revoke any dissolution. See Cal. Corp. Code §17707.09. The Order Appointing Receiver restricts Chhatrala's principals from taking that step of revocation or reinstatement. See **Exhibit 9** at para. 9(g)). Accordingly, this Chapter 11 proceeding, as to Chhatrala, can serve no purpose other than a liquidation of Chhatrala. Chhatrala is the fee simple owner of the hotel property.

35. The United States District Court for the Northern District of California has held "once a court appoints a receiver, the management loses the power to run the corporation's affairs…Thus it was the receiver, and only the receiver, who this Court empowered to place [Debtor] in bankruptcy. *Commodity Futures Trading Commission v. FITC, Inc*. 52 B.R. 935 (N.D. Cal. 1985).

36. The Bankruptcy Code does not expressly address whether a dissolved, State-created entity is eligible to be a debtor. This Court must therefore look to state law. The California Limited Liability Act provides:

> Section 17707.06 (a) - A limited liability company that has filed a certificate of cancellation nevertheless continues to exist for the purpose of winding up it affairs, prosecuting and defending actions by or against it in order to collect and

discharge obligations, disposing of and conveying it property, and collecting and dividing its assets. **A limited liability company shall not continue business except so far as necessary for its winding up.** (emphasis added).

37. The purpose of a Chapter 11 reorganization is to assist financially distressed business enterprises by providing them with breathing space in which to return to viable state. *In re Clawson Med. Rehabilitation & Pain Care Ctr., Inc.* 1087 U.S. App. LEXIS 3817 (6th Cir. March 25, 1987).

38. Based on the dissolution of the LLC, and California State law, Chhatrala is not permitted to continue business except for winding up, and they are prevented from revoking that dissolution or reinstating by the Order Appointing Receiver. Under these circumstances, the Debtor is not legally able to proceed with a reorganization. This only reinforces the need to dismiss this case.

39. The Sixth Circuit applies a "totality of facts and circumstances" test to determine if a bankruptcy case was filed in good faith. See, generally, Adell v. John Richards Homes Bldg. Co., LLC (*In re John Richards Homes Bldg. Co., LLC*), 439 F.3d 248 (6th Cir. 2005). In reviewing the totality of the facts and circumstances, the inquiry is "based more on an objective analysis of whether the debtor has sought to step outside the 'equitable limitations' of Chapter 11 than on the subjective intent of the debtor." *In re 15375 Mem'l Corp.*, 589 F.3d 605, 618, n.8 (3rd Cir. 2009). Factors to consider when conducting this inquiry are as follows:

  a. Single asset case;
  b. Few unsecured creditors;
  c. No ongoing business or employees;
  d. Petition filed on eve of foreclosure;
  e. Two party dispute which can be resolved in pending state court action;
  f. No cash or income;
  g. No pressure from non-moving creditors;
  h. Previous bankruptcy petition;
  i. Prepetition conduct was improper;
  j. No possibility of reorganization;
  k. Debtor formed immediately prepetition;
  l. Debtor filed solely to create automatic stay; and
  m. Subjective intent of the debtor

*In re Primestone Investment Partners, LP*, 272 B.R. 554, 557 (D.Del. 2002) (citing *Official Comm. of Unsecured Creditors v. Nucor Corp.* (*In re SGL Carbon Corp.*), 200 F.3d 154 (3rd Cir. 1999); *In re Phoenix Piccadilly, Ltd.*, 849 F.2d 1393, 1394-95 (11th Cir. 1988); *In re SB Properties*, 185 B.R. 198, 205 (Bankr. E.D. Pa. 1995)).

40. Applying the foregoing factors to the instant matter undeniably weighs in favor of a finding of bad faith and, establishes, "cause" to dismiss this case with prejudice.

41. This is a hotel case; there are few unsecured creditors; the Debtor filed its petition the day of the final hearing for the appointment of Receiver. It owes real property taxes of $125,000; the Debtor has limited income; the Debtor has relinquished operational control to a hotel management company and has no possibility of reorganization.

## *11 U.S.C. § 305(a)(1)*

42. Section 305(a)(1) should also be considered as a means of dismissal. That Section states, in pertinent part:

> (a) The court, after notice and a hearing, may dismiss a case under this title, or may suspend all proceedings in a case under this title, at any time if –
>
> (1) The interests of creditors and the debtor would be better served by such dismissal or suspension.

43. The decision to dismiss under § 305 is discretionary, and must be made on a case-by-case basis. *In re Skymark Properties II, LLC*, 597 B.R. 391, 398 (Bankr. E.D. Mich. 2019); citing *In re O'Neil Vill. Pers. Care Corp.,* 88 B.R. 76, 79 (Bankr. W.D. Pa. 1988).

44. Courts have further held that, "[Section] 305 provides that a bankruptcy court may dismiss a bankruptcy case or suspend proceedings within it in appropriate circumstances, which may include the pendency of state court receivership proceedings that appropriately serve the interests of involved parties." In re *Skymark Properties II, LLC*, at 398; citing *In re Newport Offshore Ltd.*, 219 B.R. 341, 354-55 (Bankr. D.R.I. 1998).

45. In the case of *In re Orchards Vill. Invs., LLC*, 405 B.R. 341, 351 (Bankr. D. Or. 2009), the bankruptcy court listed the following factors that bankruptcy courts should consider in deciding whether to dismiss or abstain a case under Section 305:

> Such factors generally include: (1) economy and efficiency of administration; (2) whether another forum is available to protect the interests of both parties or there is already a pending proceeding in a state

court; (3) whether federal proceedings are necessary to reach a just and equitable solution; (4) whether there is an alternative means of achieving the equitable distribution of assets; (5) whether the debtor and the creditors are able to work out a less expensive out-of-court arrangement which better serves all interests in the case; (6) whether a nonfederal insolvency has proceeded so far in those proceedings that it would be costly and time consuming to start afresh with the federal bankruptcy process; and (7) the purpose for which bankruptcy jurisdiction has been sought.
*Id.*

46. Ultimately, courts have held that dismissal is appropriate under § 305(a)(1) only in the situation where the court finds that both creditors and the debtor would be better served by a dismissal. *In re Skymark Properties II, LLC*, at 399; citing *In re Orchards Vill. Invs., 405 B.R. at 351*. The guarantors of the secured debt should allow the Receiver and Marshall Hotels to operate and explore options for sale or liquidation. A reorganization in this case and the Guarantors' involvement is unnecessary.

47. In the *In re Skymark Properties* case, decided recently in the Eastern District of Michigan, the Bankruptcy Court examined whether Section 305 (a)(1) should be applied in a chapter 11 proceeding that shares similar circumstances with this present matter.

48. In *Skymark Properties*, the Debtor filed a chapter 11 proceeding after a state court receivership had been established. The receiver and joint lenders filed motions to dismiss the chapter 11 proceeding under Sections 1112(b) and 350 (a)(1). *Id.* at 394.

49. The Court first denied the Debtor's ability to use cash collateral, which eliminated the Debtor's ability to use any rental proceeds. The Court then went on to describe three options for a "go forward plan" for the Debtor: (1) locating another lender to provide financing to pay off the lender, (2) selling one or more of the Debtors' properties to satisfy the Lender's claim, or (3) confirming a plan of reorganization. *Id.* at 401.

50. The Court found there was no reason why the Debtors could not pursue either of the options to locate refinancing or sell one of the properties outside of the chapter 11 while the receivership continued. *Id.* at 401-02.

51. The Court also found that the Debtors' ability to confirm a plan was not plausible because use of rents had been denied due to the assignment of rents previously exercised by the Lender. *Id*. at 401.

52. The Court determined that there was cause to dismiss under Section 1112 (b)(1), and that the interests of creditors and the debtors were better served by dismissal of the cases under Section 305(a)(1). Id. at 403.

53. The present case should similarly be dismissed. As in *Skymark*, in the present case there are only three going forward options for the Debtor to continue in chapter 11 such that relief is possible. The first go forward option would be to obtain refinancing. This is not possible because the Debtors are underwater and not reliable stewards of the property or responsible with loan proceeds. There is no realistic hope of refinancing in the amount necessary to achieve payoff of the debt in this case.

54. The second option for the Debtors is to sell property. Again, this is not achievable in this case because Access Point is permitted to credit bid the full amount of their claim. This would amount to nothing more than a Michigan state law foreclosure sale. At this time, there is approximately $14,000,000 in required hotel property improvements required by the Crowne Plaza Flag.

55. The third option is to achieve a confirmable plan. Even assuming the Debtor has access to some or all of the hotel rental proceeds in this case, they alone are not enough to provide a means to a confirmable Plan. Operational expenses, property tax expenses, adequate protection and needed property improvements are beyond the feasibility of the hotel. Additionally, financing by Access Point is required. The Debtor has no hope of confirming a chapter 11 plan under these circumstances.

**Credit Bid Limitations**

56. In the case of *In re Madison Heights Group, LLC*, 506 B.R. 732 (Bankr. E.D. Mich. 2013), the Bankruptcy Court examined whether a motion to dismiss a chapter 11 case, filed by the Debtor's primary secured creditor, should be granted under § 1112(b)(1).

57. The details of the *Madison Heights Group* case are similar to the matter at hand. In that case, the debtor filed a total of five separate rental real property units in separate chapter 11 proceedings and filed motions for joint administration. The debtors' primary secured creditor filed a motion to dismiss the chapter 11 cases only three days after the chapter 11 voluntary petition was filed. See *In re Madison Heights Group*, at 733.

58. In the analysis of whether the motion to dismiss should be granted, the Court examined whether a chapter 11 case can continue if the only options for success are third party financing, or alternatively the sale of the secured real property.

59. The Court found that third party financing was not possible because the secured debt exceeded the value of the debtor's property, such that no lender would be willing to pay the creditor's secured debt in full. *Id.* at 734.

60. The Court then found that no plan to sell the real estate could be successful because pursuant to 11 USC § 1129(b)(2)(A)(iii), any such sale would have to permit the secured creditor to credit bid up to its entire debt amount, including interest. *Id.* at 734; citing *In re Radlax Gateway Hotel, LLC,* 132 S.Ct. 2065 (2012).

61. The Court stated that the sale of the real estate was not possible in this scenario, and that such a process would be:

> . . . simply the practical equivalent of a foreclosure sale of Debtor's real estate under Michigan law, which can be accomplished more quickly and cheaply outside of bankruptcy. Allowing the Debtor to pursue this alternative in its bankruptcy case would simply cause undue and prejudicial delay for [the secured creditor], and potentially cause [the secured creditor] substantial and unnecessary attorney fees. It would serve no legitimate bankruptcy-related purpose.  For these reasons, the Court finds that there is cause to dismiss or convert this case, under 11 U.S.C. § 1112(b)(1), and that dismissal, rather than conversion to Chapter 7, is in the best interests of the creditors and the estate. The Court also finds that with the dismissal of this case, a 180-day bar to refiling is necessary and appropriate under the first sentence of 11 U.S.C. § 105(a), and also is necessary and appropriate in order to prevent an abuse of process, which would occur if a new bankruptcy case were filed by or against this Debtor within the bar period.

*In re Madison Heights Group,* at 734.

62. Similarly, in the present matter, the Debtor is significantly underwater.  Any attempt to secure third party financing will be impossible, and any attempt to sell the property will be prevented by Access Point's ability to credit bid the amount of their debt.  Under these circumstances, the chapter 11 is nothing more than the practical equivalent of a foreclosure sale that results in undue and prejudicial delay for the secured parties. Again, the Debtor is a dissolved entity, Marshall Hotels are operating and the managing member lives in California. In addition, the Debtor may have significant claims against the managing member.  The Debtor should not be allowed to proceed under these circumstances.

**Dismissal Should Be With Prejudice**

63. In light of the overwhelming evidence of bad faith identified above, Access Point requests that the Court dismiss this case with prejudice and include a bar on re-filing for a sufficient time to allow the Bank to exercise its state law rights and remedies.

64. It is well-settled that the Court has the discretion to dismiss a bankruptcy case with prejudice, for cause, pursuant to Section 349(a). *See In re Casse*, 198 F.3d 327, 338-39 (2d Cir. 1999) (citing numerous cases).

65. A dismissal with prejudice may bar a future filing for a prescribed period of time, or permanently. Id.; *see, also, In re Hieter*, 414 B.R. 665, 674 (Bankr. D.Idaho 2009) (thirteen-month bar); *In re Craighead*, 377 B.R. 648, 659 (Bankr. N.D.Cal. 2007) (three-year bar); *In re Rusher*, 283 B.R. 544, 549 (Bankr. W.D.Mo. 2002) (three-year bar); *In re Johnson*, 281 B.R. 269 (Bankr. W.D.Ky. 2002) (six-year bar); *In re Weaver*, 222 B.R. 521 (Bankr. E.D. Va. 1998) (twelve-month bar); *Norfolk v. Sav*. Soc'y v. Peia, 204 B.R. 310, 311, 315 (Bankr. D.Conn. 1996) (permanent bar); *In re Herrera*, 194 B.R. 178, 189-90 (Bankr. N.D. Ill. 1996) (twelve-month bar); *In re Robertson*, 206 B.R. 826, 830-31 (Bankr. E.D.Va. 1996) (417-day bar); *In re Gross,* 173 B.R. 774, 777 (Bankr. M.D.Fla. 1994) (two-year bar); *In re Stathatos*, 163 B.R. 83, 87-88 (N.D.Tex. 1993) (two-year bar*); In re Lerch*, 94 B.R. 998, 1002 (N.D.Ill. 1989) (two-year bar).

66. The period of time before re-filing is permitted should, at a minimum, be sufficient to allow creditors to exercise their rights and remedies. *See In re Casse,* 198 F.3d at 334 (dismissal with prejudice was for the purpose of allowing secured creditor to complete foreclosure proceedings); *In re Craighead*, 377 B.R. at 657 ("Three years should also be sufficient for any creditors of the Debtor to take whatever actions they deem appropriate pursuant to state law.").

**CONCLUSION**

67. Approximately $15,265,424.98 is owed to Access Point. The Debtor has made no payments for a significant amount of time, property taxes remain unpaid, and Debtor's principal has misappropriated and misused the Debtor's operating account and otherwise abandoned the property. The Receiver was prepared to operate and sell based on the best interest of all parties. Debtor's principal likely wishes to avoid possible State Court fraudulent transfer claims against

him, hoping he can better manage them as the person in charge of the Debtor-In-Possession. Debtor has been given every chance to pay its obligations.

68. This is a perfect case for a well-respected Receiver and a well-respected State Court Judge to manage a prompt and efficient liquidation through a receivership, rather than allowing a Chapter 11 to continue for 9 months and then convert it to a Chapter 7.

69. Access Point respectfully requests this case be dismissed with prejudice.

        Respectfully submitted,
        Keller & Almassian PLC
        Attorneys for Access Point Financial, LLC

Dated: September 17, 2019    By: /s/ A. Todd Almassian
        A. Todd Almassian (P55467)
        Michael D. Almassian (P61478)
        Greg J. Ekdahl (P67768)
        230 Fulton Street East
        Grand Rapids, MI 49503
        (616) 364-2100