UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

In re:

CHHATRALA GRAND RAPIDS, LLC,   Case No. GG 19-03908-jtg
                                Chapter 11
                                Honorable John T. Gregg

_____ Debtor./

In re:

BHOGAL ENTERPRISES, LLC,       Case No. GG 19-03909-jtg
                                Chapter 11
                                Honorable John T. Gregg

_____ Debtor./

**UNITED STATES TRUSTEE'S OBJECTION TO FIRST DAY MOTION OF DEBTORS FOR ENTRY OF ORDER (I) AUTHORIZING BUT NOT DIRECTING THE DEBTOR TO PAY CERTAIN PREPETITION WAGES, (II) GRANTING RELATED RELIEF**

Daniel M. McDermott, United States Trustee for Region 9 ("UST"), pursuant to his authority under 11 U.S.C. § 307 and 28 U.S.C. § 586(a)(3), objects to the First Day Motion of Debtors for Entry of Order (I) Authorizing But Not Directing the Debtor to Pay Certain Prepetition Wages, (II) Granting Related Relief [19-03908, D.N. 9; and 19-03909, D.N. 9] (collectively, the "Motion"), for the following reasons:

1. On September 16, 2019, Chhatrala Grand Rapids, LLC and Bhogal Enterprises, LLC ("Debtors") filed voluntary Chapter 11 petitions.

2. Pursuant to 28 U.S.C. Section 586, the UST is charged with the administrative oversight of cases commenced pursuant to Title 11 of the United States Code[1]. The UST has standing to be heard pursuant to 11 U.S.C. Section 307.

---

[1] This duty is part of the UST's overarching responsibility to enforce the bankruptcy laws as written by Congress and interpreted by the courts. *See United States Trustee v Columbia Gas Sys., Inc. (In re Columbia Gas Sys., Inc.),* 33 F.3d 294, 295-6 (3d Cir. 1994)(noting that UST has "public interest standing" under 11 U.S.C. Section 307, which goes beyond mere pecuniary interest); *Morgenstern v Revco D.S., Inc. (In re Revco D.S., Inc.)*, 898 F.2d 498, 500 (6th Cir. 1990)(describing the UST as a "watchdog").

3. Although the UST initiated the solicitation process on the petition date, an official committee of unsecured creditors has not yet been appointed.

4. On September 17, 2019, Debtors filed two "First Day Motions," including the Motion.

5. Although the UST appreciates that preserving the status quo likely requires payroll to be met, he objects to the Motion for the following reasons.[2]

6. The Motion's defined terms are confusing.  In the proposed interim order accompanying the Motion, it appears the Debtors seek to pay and honor all prepetition obligations associated with the "Workforce Obligations" and continue programs and maintain funding in the ordinary course of business, including paying from cash collateral (a) "Unpaid Compensation", (b) Deductions and Payroll Taxes", and (c) "Supplemental Workforce Obligations".  The term "Supplemental Workforce Obligations" does not appear to be defined and there is no value attributable to it in the Motion.  Also, "Workforce Obligations" is defined in the Motion at paragraph 7 to include "Other Employee Programs," a term which does not appear to be defined in the Motion.

7. To the extent the Motion is granted on an interim basis, the relief granted and the Debtors' authority should be precise and specific.

8. Any interim relief should be granted only to the extent necessary to avoid immediate and irreparable harm.  Fed. R. Bankr. P. 6003(b).  Wage/salary claims for the pay period ending before the petition date occurred, as well as amounts needed to maintain employee benefits, appear to fall within this category.

---

[2] Given the expedited consideration of the First Day Motions, the UST reserves the right to raise additional objections and arguments at any hearing on the Motion and to supplement this objection in writing at a later date.

9. The Motion states that "Unpaid Compensation" will not be paid in excess of the $12,850 limit under 11 U.S.C. § 507(a)(4). Motion ¶ 14. But the $12,850 limit per individual applies to both wages under Section 507(a)(4) and benefits under Section 507(a)(5).

10. Upon information and belief, the September 18, 2019 payroll run covers the period for September ending on September 15, 2019 and no individual's compensation in this payroll run exceeds the $12,850 per individual.

11. With the Motion, however, the Debtors ask to pay and honor all pre-petition compensation *and benefit obligations*. Any interim order on the Motion should limit the relief granted to the limitations set forth in Sections 507(a)(4) and (a)(5) of the Bankruptcy Code, including the aggregate $12,850 maximum per individual.

12. The Motion does not expressly state whether or not any amounts are proposed to be paid to or on behalf of insiders, including the Debtors' principals Surinder Bhogal and Bhavneet Bhogal.

13. Upon information and belief, the payroll run for September 18, 2019 does not include Mr. and Ms. Bhogal. The UST is not aware of whether the Debtors have any other insiders.

14. The Motion also appears to propose that Debtors be granted sole discretion (*i.e.*, "authorized, but not directed") over whether and when to pay the prepetition compensation and benefits. To the extent the Court grants the Motion, the Court should direct that any partial payments be made *pro rata*, so as not to unfairly discriminate among this class of creditors or otherwise violate Section 1123(a)(4) of the Bankruptcy Code if these payments were instead made as part of a Chapter 11 plan.

15.     The first proviso in paragraph 2 of the proposed interim order accompanying the Motion should be limited to amounts due as of the "Commencement Date," and not include "amounts that are or become due and payable between the Commencement Date and the date that a final order on the Motion is entered, unless otherwise ordered by the Court".

16.     Any such amounts have not been quantified and a supplement to the Motion should be required if additional funding for prepetition amounts is required.  Moreover, the language in paragraph 13 of the proposed interim order appears to restrict anyone's ability to challenge any ongoing payments of prepetition debts that the Debtors seek to make under the authority granted in paragraph 2.

17.     The second proviso in paragraph 2 of the proposed interim order accompanying the Motion should be revised to eliminate the phrase "pending entry of a final order" as the limitations in Section 507(a)(4) and (a)(5) should not be exceeded.

18.     Paragraph 3 of the proposed interim order accompanying the Motion would appear to allow the Debtors to modify, discontinue, reduce, or eliminate expenses or benefits without prior approval of the Court.  This relief is not appropriate for an interim order.

19.     This Motion should be read together with Debtors' cash collateral motion [19-03908, D.N. 10; and 19-03909, D.N. 10] and only be granted to the extent that Debtors do not create an administrative or secondary insolvency due to a cash flow shortage caused by the payment of prepetition claims.  These proposed payments should be added to any future "carve-outs" and administrative expense "guarantee" from its secured creditors for the payment of the prepetition priority wage claims so that the Debtors do not violate the priority scheme of the Bankruptcy Code.

Therefore, the United States Trustee requests that the Court decline to grant the relief as requested and grant such other relief as the Court may deem just.

                                          Respectfully Submitted,

                                          DANIEL M. McDERMOTT
                                          United States Trustee, Region 9

Dated: September 17, 2019          By: /s/ Matthew W. Cheney
                                          Matthew W. Cheney (P80991)
                                          Assistant United States Trustee
                                          Office of the United States Trustee
                                          125 Ottawa Avenue, NW, Suite 200R
                                          Grand Rapids, Michigan 49503
                                          (616) 456-2002 ext. 116